UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| INDIANA RIGHT TO LIFE VICTORY FUND, and SARKES TARZIAN, INC., | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) No.: 1:21-cv-02796-SEB-TAB ) |
| HOLLI SULLIVAN, in her official capacity as Secretary of State, et al. | ) ) ) ) |
| Defendants. | ) ) |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

Plaintiffs failed to carry their burden to show that they have standing to litigate their pre-enforcement challenge to Indiana's campaign-finance laws. First, the text of the laws alone is not enough to establish standing; it must be coupled with a credible threat of *enforcement*, which is absent here. Second, and relatedly, Plaintiffs misapprehend the nature of injunctive relief, which is to enjoin officials from *enforcing* laws in an unconstitutional manner, not to enjoin the laws themselves. And given that Indiana's campaign-finance laws have not been and will not be enforced in the manner Plaintiffs' fear, there is nothing for this Court to enjoin. Accordingly, this Court should dismiss Plaintiffs' suit because there is no case or controversy and no relief that this Court can provide.

## Argument

### Plaintiffs lack standing because there is no credible threat of enforcement of an independent-expenditure limit on corporate contributions to PACs.

This case should be dismissed because Plaintiffs cannot establish a credible threat of enforcement of the challenged laws in an unconstitutional manner, which is necessary for Article III standing—even in a case involving a First Amendment pre-enforcement challenge. A credible threat of enforcement requires something more than Plaintiffs' "imaginary or speculative" fear of state prosecution. *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979) (citing *Younger v. Harris*, 401 U.S. 37, 42 (1971)). To be sure, Plaintiffs are not required to first endure a criminal prosecution before they may bring a constitutional challenge to a statute. *Id.* But "when plaintiffs do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible, they do not allege a dispute susceptible to resolution by a federal court." *Id.* (quotation omitted).

There are two ways a plaintiff may demonstrate a credible threat of enforcement in the future. One way is to point to evidence of past enforcement against plaintiff or other speakers. *See e.g., Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164 (2014) ("history of past enforcement" is "good evidence" of a genuine threat of enforcement); *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974) ("[P]ast wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury."). Another is to offer evidence of threats of future enforcement, including evidence of a state's refusal to disavow its intention to enforce a law in a particular

manner when asked. *See, e.g., Babbitt*, 442 U.S. at 302 (holding that the challengers had standing because of the plain text of the law and "the State has not disavowed any intention of invoking the criminal penalty provision"). Plaintiffs, here, have evidence of neither.

      Plaintiffs have no evidence of past enforcement. Though the laws have been on Indiana's books for decades, Plaintiffs have not offered anything to show that Indiana's election officials have previously taken action against a corporation for contributing to a PAC for the purpose of independent expenditures or applied a limit (of $22,000 or otherwise) to corporate contributions to PACs for independent expenditures. Indeed, the only evidence Plaintiffs offer is minutes from a single meeting of the Indiana Election Commission in 2013 that did not address independent expenditures. ECF 48-4. In the meeting, the Commission fined a corporation for failing to specifically designate the recipients of a contribution it gave to an organization; the corporation had given $17,000, and when the election officials reached out to the corporation to learn more about the breakdown of its contribution to particular candidates or groups, the corporation did not respond. ECF 48-4. Critically, the corporation did *not* reply that it contributed to the PAC for the purpose of independent expenditures. ECF 48-4. Instead, the corporation remained silent, and was fined as a result. ECF 48-4. Plaintiffs' evidence is therefore beside the point. If anything, it only highlights their inability to show that they face a credible threat of enforcement owing to the lack of historical

enforcement of a limit on corporate contributions to PACs for independent expenditures.

Second, Plaintiffs cannot identify any credible threat of future enforcement because state election officials have disavowed any intent to enforce the challenged laws in a manner that would prohibit or limit corporate contributions to PACs for independent expenditures. ECF 45-6, 45-7, 45-8. Plaintiffs resort to quibbling with the language of the officials' affidavits to save their suit. But what the officials say is clear: they will not enforce Indiana Code sections 3-9-2-4 and 3-9-2-5 against corporations that contribute to PACs for the purpose of making independent expenditures. *See* ECF 45-6, 45-7, 45-8. In other words, there is no prohibition on corporate contributions to PACs for independent expenditures. And there is no limit on them either—not the aggregate $22,000 limit found in section 4 or any other amount. The Secretary of State and two members of the Election Commission affirmed they will not apply Indiana Code sections 3-9-2-4 or 3-9-2-5 to the conduct in which Plaintiffs wish to engage. Plaintiffs thus face no threat at all, which falls far short of their burden to invoke federal jurisdiction.

Plaintiffs are wrong that a credible threat of enforcement is implied by the mere "existence of a statute," even when officials expressly indicate they will not impose penalties. ECF 46 at 5. Plaintiffs pluck quotes from cases that they say support their conclusion, but none of those cases support their argument. For example, in *Wisconsin Right to Life PAC v. Barland*, 664 F.3d 139, 147 (7th Cir. 2011), the Seventh Circuit did not analyze whether Wisconsin Right to Life faced a

4

credible threat of enforcement; the crux of the standing issue was whether the challenged law regulated the plaintiffs' conduct at all. Likewise, in *Schmirer v. Nagode*, 621 F.3d 581, 585 (7th Cir. 2010), the Seventh Circuit addressed a different standing issue, holding that plaintiffs lacked standing to enjoin the enforcement of a failure-to-disperse law because it clearly did not apply to plaintiffs' actions. And though the case was mentioned in *Shirmer* (and cited by Defendants), Plaintiffs omitted any reference to *Lawson v. Hill*, 368 F.3d 955, 957 (7th Cir. 2004), where the Seventh Circuit affirmed dismissal of a pre-enforcement challenge for lack of standing because "the prosecutor had expressed no interest in prosecuting the plaintiff under the statute." *Schmirer*, 621 F.3d at 585.

Perhaps most surprisingly, one of the cases Plaintiffs cite in support of their position directly undercuts their argument. ECF 46 at 10. Plaintiffs rely on the Sixth Circuit's decision in *Plunderbund Media, L.L.C. v. Dewine*, 753 F. App'x 362 (6th Cir. 2018), which held that the plaintiffs *did not* face a credible threat of prosecution because there was no allegation that law had ever been enforced or threatened to be enforced against plaintiffs, there was no showing of history of enforcement against type of online posts they made, and the State had expressly affirmed that law did not reach political expression. In fact, the Sixth Circuit's conclusion in *Plunderbund Media* spoils Plaintiffs' argument: "The lack of a history or likelihood of enforcement combined with Defendants' stated intention not to enforce the … statutes against Plaintiffs shows there is no 'substantial risk' that

5

Plaintiffs will be prosecuted." *Id.* at 372 (citing *Susan B. Anthony List*, 573 U.S. at 156–57).

Indeed, Plaintiffs' suit is no different than the one dismissed in *Wisconsin Right to Life, Inc. v. Paradise*, 138 F.3d 1183 (7th Cir. 1998), which Plaintiffs fail to address. In that case, the challenged Wisconsin laws had been on the books for almost 25 years, and its election board had not prosecuted any issue-advocacy group for violating its election laws in the way Wisconsin Right to Life claimed they feared. *Id.* at 1185. Instead, the State's election board and its Attorney General disclaimed any intent to apply its election laws in a manner that would run afoul of the Supreme Court's decisions. *Id.* Accordingly, the Seventh Circuit held that Wisconsin Right to Life lacked standing because its alleged injury was not redressable by the relief sought. *Id.* Plaintiffs' similar attempt to manufacture a case or controversy should suffer the same fate. *Paradise*, 138 F.3d at 1186; *see also Abbott v. Pastides*, 900 F.3d 160, 176–77 (4th Cir. 2018) (student organization did not demonstrate credible threat of future enforcement when the university informed organizations that no investigation or sanction was forthcoming, the university did not threaten any future discipline for any such events, and the university showed its intent to allow such speech); *Doe v. Pryor*, 344 F.3d 1282 (11th Cir. 2003) (no credible threat of enforcement of statute).

In the end, Plaintiffs can engage in the conduct they desire without a federal court order directing Defendants to allow that conduct. An injunction only prevents state officials from *enforcing* the challenged statutes, and "does not erase an

6

unconstitutional state law from existence." *Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 520–21 (7th Cir. 2021); *see also Whole Women's Health v. Jackson*, 141 S. Ct. 2494, 2495 (2021). And given the lack of enforcement of Indiana's campaign-finance laws in a manner that would run afoul of *Citizens United*, there is nothing to enjoin.

## Conclusion

Despite the laws having been on the books for the decades, Plaintiffs have not identified a single case showing that state officials have enforced the laws in the manner that they fear, and current officials expressly affirmed they would not alter course. That combination, the Seventh Circuit and other courts have consistently held, renders any threat of enforcement speculative, thereby depriving Plaintiffs of the concrete and imminent injury needed to trigger federal jurisdiction under Article III. Absent a credible threat of enforcement of Indiana's campaign-finance laws in an unconstitutional manner, there is no one for this Court to enjoin. Plaintiffs' suit should be dismissed.

Respectfully submitted,

THEODORE E. ROKITA
Attorney General of Indiana
Attorney No. 18857-49

Date: February 18, 2022    By:    Caryn N. Szyper
Attorney No. 30063-49
Deputy Attorney General
OFFICE OF INDIANA ATTORNEY GENERAL
TODD ROKITA
Indiana Government Center South, 5th Floor
302 West Washington Street
Indianapolis, Indiana 46204-2770

Phone: (317) 232-6297  
Fax: (317) 232-7979  
Email: Caryn.Szyper@atg.in.gov