UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

INDIANA RIGHT TO LIFE VICTORY    )
FUND, et al.    )
    )
         Plaintiffs,    )
    )
         v.    )     No. 1:21-cv-02796-SEB-TAB
    )
HOLLI SULLIVAN, et al.    )
    )
         Defendants.    )

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND,
ALTERNATIVELY, DENYING PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION**

Plaintiffs initiated this lawsuit on November 4, 2021, challenging two Indiana

campaign-finance laws that they believe violate the First Amendment by limiting the

contributions a corporation may make to political action committees ("PACs") created

and operating for the sole purpose of providing funds to cover independent expenditures.

Currently before the Court are Plaintiffs' Motion for Preliminary Injunction [Dkt. 6] to

which Defendants responded in opposition [Dkt. 45], and Defendants' Motion to Dismiss

filed pursuant to Federal Rule of Civil Procedure 12(b)(1) [Dkt. 44] to which Plaintiffs

responded in opposition [Dkt. 50]. On February 28, 2022, the Court heard oral arguments

on both motions. Having now considered the issues raised by the parties as well as their

evidentiary and other written submissions, and the controlling principles of law, we

hereby <u>GRANT</u> Defendants' Motion to Dismiss and <u>DENY</u> Plaintiffs' Motion for Preliminary Injunction. [1]

### **Factual Background**

The following facts are deemed true for purposes of the motion to dismiss, having been drawn from the allegations in Plaintiffs' complaint[2] along with all reasonable inferences therefrom which are construed in favor of Plaintiffs as the non-moving party. *See Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

Plaintiff Indiana Right to Life Victory Fund ("IRTL Victory Fund") is an Indiana independent-expenditure-only PAC, whose sole and exclusive purpose is to receive, administer, and expend funds in connection with independent expenditures ("IEs") relating to candidates for Indiana elective offices. Compl. ¶¶ 41–42. Indiana statutes do not define the term "independent expenditure," but, under federal law, the term is defined as an expenditure "for a communication expressly advocating the election or defeat of a clearly identified candidate that is not made in cooperation, consultation, or concert with, or at the request or suggestion of, a candidate, a candidate's authorized committee, or their agents, or a political party committee or its agents." *Id.* ¶ 35 (quoting 11 C.F.R. § 100.16). IRTL Victory Fund seeks to solicit and accept unlimited contributions for the

---

[1] In light of our decision to dismiss Plaintiffs' complaint for want of jurisdiction, Plaintiffs' Motion to Consolidate Hearing on Motion for Preliminary Injunction with Trial on the Merits [Dkt. 8] is <u>DENIED AS MOOT</u>.
[2] The facts are drawn from Plaintiffs' complaint unless otherwise noted. *See Estate of Eiteljorg ex rel. Eiteljorg v. Eiteljorg,* 813 F.Supp.2d 1069, 1074 (S.D. Ind. 2011) (stating that the court may look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted when deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1)).

purpose of making IEs in the upcoming 2022 primary and general elections, explaining that it has established a separate bank account for contributions designated for IEs to ensure that no monies will be accepted for making contributions to any candidate or political party. *Id.* at ¶¶ 44–46. IRTL Victory Fund asserts that, despite its intentions, it is being prohibited from soliciting and accepting contributions for IEs by virtue of Indiana's Election Code. *See id.* at ¶¶ 44, 46.

Plaintiff Sarkes Tarzian, Inc. ("Sarkes") is an Indiana corporation that reportedly intends to make a $10,000 contribution to IRTL Victory Fund earmarked for the purpose of making IEs. *Id.* at ¶ 47. Sarkes says that it is ready, willing, and able to make such a contribution, but will only follow through with such a contribution if neither it nor IRTL Victory Fund is subject to the Election Code's prohibitions on corporations contributing to PACs for purposes of IEs and exposed to the associated penalties. *Id.* Plaintiffs assert that they also intend to give, solicit, and accept corporate contributions for IEs in the future. *See id.* at ¶ 49.

Plaintiffs have brought this lawsuit against Indiana's Secretary of State, Indiana's Election Commission and its members, the co-directors of the Indiana Election Division, Indiana's Attorney General, and the prosecuting attorneys for Marion and Monroe Counties, alleging that two provisions of the Indiana Code, § 3-9-2-4 and § 3-9-2-5, violate the First Amendment by prohibiting the contributions a corporation may make to PACs for the purpose of IEs.

**I.      Indiana's Election Code**

Indiana's election laws are codified at Indiana Code § 3, *et seq*. Under these statutes, a political action committee is defined as:

> an organization located within or outside Indiana that satisfies all of the following:
>
> (1) The organization proposes to influence:
>    (A) the election of a candidate for state, legislative, local, or school board office; or
>    (B) the outcome of a public question.
>
> (2) The organization accepts contributions or makes expenditures during a calendar year:
>    (A) to influence the election of a candidate for state, legislative, local, or school board office or the outcome of a public question that will appear on the ballot in Indiana; and
>    (B) that in aggregate exceed one hundred dollars ($100).

IND. CODE § 3-5-2-37.

IRTL Victory Fund identifies itself as an "independent-expenditure-only PAC," which is nowhere explicitly referenced or specifically defined under Indiana law. In fact, IRTL Victory Fund is the first PAC to designate itself as such in Indiana, claiming that it falls within the definition of a PAC under Indiana Code § 3-5-2-37.

A corporation is permitted under Indiana law to contribute[3] to a PAC, and "may make a contribution to aid in the: (1) election or defeat of a candidate; or (2) the success or defeat of: (A) a political party; or (B) a public question submitted to a vote in an election." IND. CODE § 3-9-2-3(a). However, contributions by a corporation "are **limited**

---

[3] For a PAC, "[a] contribution is any donation accepted by a political action committee governed by Indiana's election laws. A 'contribution' includes cash, checks, gifts of property or services, loans, in-kind contributions, or any other things received by the committee that have value." Dkt. 45-1 at 47.

**to those authorized** by sections 4, 5, and 6 of this chapter." IND. CODE § 3-9-2-3(b)

(emphasis added).

## II.    Contested Indiana Election Code Statutes

Indiana Code § 3-9-2-4 caps annual corporate contributions at $22,000 and lists

eight categories of recipients to which a corporation may contribute along with the

monetary amounts that may permissibly be apportioned per each category. That statute

provides as follows:

> During a year a corporation may not make total contributions in excess of:
>
> (1) an aggregate of five thousand dollars ($5,000) apportioned in any manner among all candidates for state offices (including a judge of the court of appeals whose retention in office is voted on by a district that does not include all of Indiana);
>
> (2) an aggregate of five thousand dollars ($5,000) apportioned in any manner among all state committees of political parties;
>
> (3) an aggregate of two thousand dollars ($2,000) apportioned in any manner among all candidates for the senate of the general assembly;
>
> (4) an aggregate of two thousand dollars ($2,000) apportioned in any manner among all candidates for the house of representatives of the general assembly;
>
> (5) an aggregate of two thousand dollars ($2,000) apportioned in any manner among regular party committees organized by a legislative caucus of the senate of the general assembly;
>
> (6) an aggregate of two thousand dollars ($2,000) apportioned in any manner among regular party committees organized by a legislative caucus of the house of representatives of the general assembly;
>
> (7) an aggregate of two thousand dollars ($2,000) apportioned in any manner among all candidates for school board offices and local offices; and

5

> (8) an aggregate of two thousand dollars ($2,000) apportioned in any
> manner among all central committees other than state committees.

IND. CODE § 3-9-2-4. Corporate contributions for the purpose of making IEs are not

included as a permissible category for designation under section 4.

Indiana Code § 3-9-2-5 describes limitations on the various kinds of corporate

contributions, stating in relevant part that:

> (a) A contribution:
>     (1) authorized under subsection (c) or section 4 of this chapter;
>     (2) to a committee by a corporation or labor organization; and
>     (3) designated by that corporation or labor organization for
>     disbursement to a specific candidate, central committee, or other regular
>     party committee;
> is subject to the limitations in section 4 of this chapter.
>
> . . .
>
> (c) A corporation or labor organization may make a contribution to a
> political action committee if the contribution:
>     (1) does not exceed any of the limits prescribed under section 4 of this
>     chapter; and
>     (2) is designated for disbursement to a specific candidate or committee
>     listed under section 4 of this chapter.

IND. CODE § 3-9-2-5. Again, Section 5 of the Indiana Code does not explicitly reference

corporate contributions for IEs.

Exceptions to the two contested statutes are set out in Indiana Code § 3-9-2-6,

which provides:

> Sections 4 and 5 of this chapter do not apply to the following:
>
> (1) Nonpartisan registration and get-out-the-vote campaigns:
>     (A) by a corporation aimed at its stockholders and employees; or
>     (B) by a trade association or labor organization aimed at its members.

(2) A contribution or transfer by an incorporated nonpartisan political action committee to any other committee.

(3) A contribution supporting or opposing the approval of a public question submitted to the electorate of the entire state or a local public question.

IND. CODE § 3-9-2-6. Corporate contributions for the purpose of making IEs are not listed as an exception to the contributions authorized under Indiana Code sections 4 and 5.

A corporation's violation of the contested statutes in the Indiana Election Code may result in the imposition of civil[4] or criminal penalties.[5]

## III.    The Instant Lawsuit

Plaintiffs filed their complaint and contemporaneously moved for preliminary injunctive relief on November 4, 2021, alleging that Indiana Code § 3-9-2-4 and § 3-9-2-5 effectively prohibit the contributions of a corporation to PACs for the purpose of IEs, in violation of the First Amendment.[6] On February 4, 2022, Defendants moved to dismiss the case, pursuant to Fed. R. Civ. P. 12(b)(1), asserting that Plaintiffs lack standing because they have not suffered an injury-in-fact due to the total lack of enforcement of

---

[4] If the Indiana Election Commission determines that "a corporation . . . exceeds any of the limitations on contributions prescribed by IC 3-9-2-4" it *may* assess a civil penalty "of not more than three (3) times the amount of the contribution in excess of the limit prescribed by IC 3-9-2-4, plus any investigative costs incurred and documented by the election division." IND. CODE §§ 3-9-4-16(a)(5), (e). If the Indiana Election Commission determines that a corporation "has failed to designate a contribution in violation of IC 3-9-2-5(c), the commission shall assess a civil penalty" that is equal to the greater of (1) two times the amount of the undesignated contribution or (2) $1,000; "plus any investigative costs incurred and documented by the election division[.]" IND. CODE § 3-9-4-16(g).
[5] "A corporation . . . that recklessly exceeds any of the limitations on contributions prescribed by IC § 3-9-2-4 commits a Class B misdemeanor." IND. CODE § 3-14-1-10.
[6] Plaintiffs also filed a Motion to Consolidate [Dkt. 8] the preliminary injunction hearing with a trial on the merits which was taken under advisement. We now hold that Plaintiffs' motion to consolidate is <u>DENIED AS MOOT</u>.

these statutes in the manner Plaintiffs say they fear and that the Supreme Court's decision

in *Citizens United v. Federal Election Commission* clearly prohibits. 558 U.S. 310, 365

(2010). Indiana defendants/election officials have declared through their brief and

accompanying affidavits that the Indiana Election Code does not regulate IEs and that

they have no intention of prohibiting or limiting corporate contributions for IEs in the

future. As a result, Defendants maintain that this court lacks subject-matter jurisdiction to

hear and decide Plaintiffs' constitutional claim. Alternatively, Defendants contend that

the court should abstain from reaching a decision on the merits under the *Pullman*

doctrine.

## Legal Analysis

The crux of the parties' dispute in the case before us turns on whether the Indiana

Election Code regulates, limits, or precludes corporate contributions to PACs for IEs

under Indiana Code § 3-9-2-4 and § 3-9-2-5. Plaintiffs acknowledge that Indiana statutes

are entirely silent as to contributions for IEs but argue that this type of corporate

contribution is nonetheless precluded under Indiana law because "[c]ontributions by a

corporation . . . **are limited to those authorized by sections 4, 5, and 6** of this chapter."

IND. CODE § 3-9-2-3(b) (emphasis added). Both sides readily admit that corporate

contributions for IEs are not listed as a category for designation under Indiana Code § 3-

9-2-4, are not discussed as a method of corporate contribution under Indiana Code § 3-9-

2-5, and are not listed in Indiana Code § 3-9-2-6 as an exception to the corporate

contributions authorized in sections 4 and 5. However, their views diverge as to the

meaning and import of these omissions. Defendants contend that the Indiana Election

Code's silence regarding corporate contributions for IEs signals that these contributions are not regulated, allowing Plaintiffs to freely engage in their intended conduct, which freedom is fully compliant with the *Citizens United* requirement that corporate contributions for IEs may not be limited. Plaintiffs on the other hand maintain that the statute's failure to address contributions for IEs effectively prohibits them altogether, thereby subjecting Plaintiffs to civil and/or criminal penalties if Sarkes makes, and IRTL Victory Fund receives, the intended contribution(s).

## I.   Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)

Defendants' lack of subject-matter jurisdiction argument is pinned to Plaintiffs' inability to establish an "injury in fact," since there is no credible threat that Sarkes (or IRTL Victory Fund) will face any penalty by making the $10,000 corporate contribution. "Subject-matter jurisdiction is the first question in every case, and if the court concludes that it lacks jurisdiction it must proceed no further." *State of Illinois v. City of Chicago*, 137 F.3d 474, 478 (7th Cir. 1998); *see also* Fed. R. Civ. P. 12(b)(1). For the reasons explicated below, we agree that under the circumstances before us Plaintiffs are unable to establish an injury in fact and thus lack standing to bring this claim. We therefore must GRANT Defendants' motion to dismiss.

### A.  Standard of Review

As noted previously, Defendants' 12(b)(1) motion to dismiss challenges our subject-matter jurisdiction, thereby shifting the burden of proof to Plaintiffs to establish that jurisdiction exists. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). In ruling on a Rule 12(b)(1) motion, we "must accept the complaint's well-pleaded factual

allegations as true and draw reasonable inferences from those allegations in the plaintiff's favor." *Franzoni v. Hartmarx Corp.,* 300 F.3d 767, 771 (7th Cir. 2002); *Transit Express, Inc. v. Ettinger,* 246 F.3d 1018, 1023 (7th Cir. 2001). The court may, however, "properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *See Capitol Leasing Co. v. F.D.I.C.,* 999 F.2d 188, 191 (7th Cir. 1993); *Estate of Eiteljorg ex rel. Eiteljorg v. Eiteljorg,* 813 F.Supp.2d 1069, 1074 (S.D. Ind. 2011).

Here, Defendants specifically assert that Plaintiffs lack standing to bring their First and Fourteenth Amendments challenges. Thus, to establish their standing under Article III of the Constitution, they must show: (1) an "injury in fact," (2) that the challenged conduct caused the injury, and (3) that there is some likelihood that a decision in his favor will remedy the injury. *Susan B. Anthony List v. Driehaus ("SBA List")*, 573 U.S. 149, 157–58 (2014).

## B. Discussion

Defendants contend, and we agree, that Plaintiffs' showing falters on their inability to establish an "injury in fact."[7] For an injury to satisfy Article III standing requirements, it must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *SBA List*, 573 U.S. at 158 (quoting *Lujan*, 504 U.S. at 560). Where the plaintiff brings a facial challenge to a statute under the First Amendment, a prior

---

[7] Defendants alternatively assert that, even if we were to find that Plaintiffs have standing to bring their claims, we should abstain from reaching a decision on the merits under the *Pullman* doctrine. Because we have found that Plaintiffs lack standing, we do not address or resolve the parties' arguments concerning abstention under the *Pullman* doctrine.

enforcement action is not required. *Id.* at 158–59. However, in the absence of a prior enforcement action, "plaintiffs must make one of two showings to establish an injury in fact. First, a plaintiff may show an intention to engage in a course of conduct arguably affected by a policy, and that he faces a credible threat the policy will be enforced against him when he does." *Speech First, Inc. v. Killeen*, 968 F.3d 628, 638 (7th Cir. 2020), *as amended on denial of reh'g and reh'g en banc* (Sept. 4, 2020) (citation omitted). "Second, a plaintiff may show a chilling effect on his speech that is objectively reasonable, and that he self-censors as a result." *Id.* (citing *Bell v. Keating*, 697 F.3d 445, 454 (7th Cir. 2012)); *see also Laird v. Tatum*, 408 U.S. 1, 13–14 (1972) ("[A] plaintiff's notional or subjective fear of chilling is insufficient to sustain a court's jurisdiction under Article III."). While these two showings in certain respects overlap, a credible threat of enforcement is critical in either context. *Speech First, Inc.*, 968 F.3d at 639 n.1.

Plaintiffs maintain that Indiana Code § 3-9-2-4 and § 3-9-2-5 together act to prohibit Sarkes from making a $10,000 corporate contribution to IRTL Victory Fund, arguing that, if the contribution is made, Plaintiffs will likely be subject to civil and/or criminal penalties. Plaintiffs have never been penalized or prosecuted under either statute but contend that the mere existence of these potential penalties chills their protected speech rights, as evidenced by Sarkes's assertion that it will not contribute its intended $10,000 for IEs unless Defendants are enjoined from enforcing the statutes against either itself or the PAC.

Defendants stress that Plaintiffs fears are unfounded and that they face no credible threat of enforcement, and thus no injury in fact, because the contested statutes simply do

not address, never mind regulate or preclude Plaintiffs' intended conduct. According to Defendants, these statutes have never been enforced to that effect nor have there been any threats to enforce the statutes in the way that Plaintiffs apprehend; indeed, Defendants state that they have no intention of applying the statutes in the manner Plaintiffs reference because to do so would violate clearly established federal prohibitions against such action. *E.g.*, *Citizens United v. FEC*, 558 U.S. 310 (2010). Defendants note that before bringing suit, Plaintiffs never spoke with any state election officials about whether corporate contributions to PACs for IEs are regulated, and Plaintiffs admit that no Indiana election official has ever indicated to them that Indiana law limits or prohibits IE contributions by corporations or others. The affidavits of Indiana's Secretary of State and two members of the Indiana Election Commission affirmatively disclaim any intent to enforce a limit on contributions for IEs in the future, which collectively bars any potential threat of enforcement against Plaintiffs for their intended contribution. *See* dkt. 45-6; dkt. 45-7; dkt. 45-8. Given these factors—the history of non-enforcement coupled with an affirmative disclaimer of any intent to enforce—Plaintiffs are unable to establish an injury in fact and thus a basis for federal jurisdiction.

Plaintiffs maintain that they do have standing because they are subject to an *implied* threat of enforcement under the plain text of the statutes, despite Defendants never having investigated nor punished any corporations for giving contributions to PACs for the purpose of IEs based on Indiana Code § 3-9-2-4 and/or § 3-9-2-5. Plaintiffs dismiss Defendants' history of non-enforcement as irrelevant, given that this specific issue has never previously been considered or addressed by the Election Division. The

12

mere existence of the statutes fraught by these omissions, Plaintiffs assert, chills their speech because the text, as written, still allows Defendants to investigate and/or punish them for their intended corporate contribution for IEs, currently or at some point in the future. The only assurance to the contrary is a court decision holding the statutes unconstitutional as applied to corporate contributions for IEs.[8] According to Plaintiffs, because the state has not issued a formalized policy position on these contributions, their speech has been and continues to be chilled. Defendants' inability (or failure) to submit affidavits by *every* state official each disavowing an intent to enforce the statutes against corporate contributions for IEs, leaves Plaintiffs exposed to statutory penalties, they say; stated otherwise, according to Plaintiffs, the three affidavits that have been provided clearly do not include all current election officials or their successors or foreclose the referenced risks of enforcement against Plaintiffs, now or in the future.

Following the Supreme Court's decision in *Citizens United v. Federal Election Commission*, corporate contributions for the purpose of making IEs are not subject to

---

[8] As support, Plaintiffs cite a prior penalty having been imposed by the Indiana Election Commission on a corporation for a violation of Indiana Code § 3-9-2-4 based on a $17,000 contribution by the corporation to a PAC without supplying a permitted designation. Because these Election Code statutes do not recognize IEs as a permitted designation, Plaintiffs maintain that they too could face penalties by failing to list a permitted designation, if Sarkes were to make (and IRTL Victory Fund to accept) the intended $10,000 corporate contribution for IEs. We find this holding distinguishable on the grounds argued by Defendants, namely, that this specific penalty was assessed because the corporation had made the $17,000 contribution without listing any designation at all, and, when election officials reached out to the corporation to learn more about the breakdown of its contribution, the corporation did not respond in any way, much less respond that it had contributed to the PAC for IEs. Defendants argue, and we agree, that Plaintiffs can simply list that their contribution is for IEs, which, as Defendants have repeatedly stated, is not regulated under Indiana law and will not become the basis for assessing penalties.

limitations/regulations, the reasoning being that there is "[n]o sufficient governmental interest [that] justifies limits on the political speech of nonprofit or for-profit corporations." 558 U.S. 310, 365 (2010). Relying on the Seventh Circuit's holding in *Wisconsin Right to Life State Political Action Committee v. Barland*, Plaintiffs maintain that they, too, have incurred an injury in fact sufficient to establish standing. 664 F.3d 139 (7th Cir. 2011). In *Barland*, the appellate court found that a PAC had standing to bring an action challenging Wisconsin campaign-finance laws under the First Amendment, which statutes imposed a $10,000 cap on aggregate annual amounts individuals may contribute to state or local candidates, political parties, and political committees. Civil or criminal penalties could be assessed for any violations of these limits. The PAC challenged these limits as unconstitutional restrictions on contributions to committees that engaged only in independent spending to support political speech. The *Barland* Court ruled that the PAC "need not risk prosecution or otherwise await enforcement of the statute in order to establish its standing to sue," having determined that the contested law "restricts political speech and may be challenged prior to enforcement based on the chill it places on the exercise of First Amendment rights and the corresponding risk of self-censorship." *Id.* at 147.

The *Barland* Defendants had challenged the plaintiff PAC's standing on the grounds that the challenged law did not apply to the PAC because the PAC did not itself make any political contributions. *Id.* The Seventh Circuit did not credit this argument, however, holding that the statute's aggregate $10,000 annual cap on the amount individuals may contribute to political candidates, parties, and political committees

14

comprised a limitation binding on anyone who contributes to the PAC, so the statute did operate to limit the contributions the committee may lawfully receive. *Id.* Given that the PAC had identified two individual contributors who attested to their intention to contribute amounts larger than the statutory limit but refrained from doing so because of this statute, the Court held that the PAC had standing to pursue its claim. *Id.* Notably, however, in *Barland* there was no evidence that the state election officials had disavowed any intent to enforce the law in the way that the PAC feared or that the state election officials had affirmatively promised to follow the *Citizens United* precedent. The *Barland* Defendants attempted to distinguish *Citizens United* but were unsuccessful. *Id.* at 155 (stating that defendants argued that the aggregate cap on individual contributions, even when applied to IEs, prevents the *indirect* appearance of corruption and is thus constitutional despite *Citizens United*).

In contrast, Defendants here focus on the holding in *Wisconsin Right to Life, Inc., v. Paradise* to argue that a litigant cannot, through a "facial" attack on a statute, simply create a case or controversy; an actual injury and redressability must be plainly established. 138 F.3d 1183 (7th Cir. 1998). *Paradise* involved a plaintiff PAC's challenge to a state's PAC registration statute enacted twenty-five years prior to the case in suit. The PAC had asserted that it intended to distribute materials it feared would violate the statute and that, because of this fear, it had "self-censored" itself by curtailing its voter education program. The PAC had sued the state attorney general and election board, seeking to compel them to administer state election laws in accord with federal Supreme Court dictates. *Id.* at 1183.

The *Paradise* Court ruled that the PAC lacked standing because it had not alleged a redressable form of relief. *See id.* The Court reasoned that the PAC did not face a current threat of sanctions, the parties had adduced no evidence of any prior prosecutions based on the PAC's intended conduct under the statute, and the election board and attorney general respectively had issued a regulation and non-binding advisory opinion that provided the benefits the PAC sought to gain from its lawsuit. *Id.* at 1185. The PAC's claim thus failed to satisfy Article III standing requirements because a "[federal] court is not permitted to prescribe how a state must deal with disputes that have never arisen and may never do so . . . Such a foray is the paradigm of an advisory opinion." *Id.* at 1187; *see also Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298–99 (1979) ("When plaintiffs 'do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible,' they do not allege a dispute susceptible to resolution by a federal court.").

We find the case before us to closely parallel the situation addressed in *Paradise*. As such, it is readily distinguishable from *Barland*. Plaintiffs here can not and have not established that the contested Indiana statutes have been, currently are, or ever will be enforced against corporate contributions for the purpose of making IEs. Sarkes has never been fined or prosecuted—or threatened with such action—for exceeding limits for corporate contributions to a PAC for IEs. Defendants correctly acknowledge that the Supreme Court's decision in *Citizens United* forbids governmental limitations on corporate contributions for IEs. This holding renders Plaintiffs' allegation that their speech has been "chilled" by these otherwise silent statutes objectively unreasonable.

16

Despite Plaintiffs' assertion that the state's proffered affidavits are incomplete and cannot be trusted, there is no support for their skepticism beyond pure speculation. Plaintiffs have been informed that they can engage in their desired conduct without penalty, and Defendants, as state officials, in so representing their intentions not to enforce any such limitations are presumed to be acting in good faith. In any event, we think it highly unlikely that Defendants go back on their word and in the process also intentionally violate federal law.

The affidavit of Indiana's Secretary of State, Holli Sullivan, whose powers include the referral of matters to a prosecutor for any prosecution of violations arising under these statutes, [Dkt. 45-6], specifically opines that the Indiana Election Code does not regulate IEs, that *Citizens United* would bar a state's prohibition or limitation of IEs, and that she has not and will not refer any corporation to a prosecuting attorney for criminal prosecution for making a contribution to a PAC for the purpose of IEs. *Id.* at ¶¶ 5–8. The affidavits of two of the four-member Indiana Election Commission note that the Commission is empowered to refer matters to the Indiana Attorney General or to a prosecuting attorney when three out of the four members affirmatively vote to do so.[9] *See* dkt. 45-7; dkt. 45-8. The Chair of the Commission, Paul Okeson, as well as member

---

[9] The Indiana Election Commission "shall expeditiously make an investigation" if it determines that there is substantial reason to believe an election law violation has occurred. IND. CODE. § 3-6-4.1-21(b). "If in the judgment of the commission, after affording due notice and an opportunity for a hearing" a person has engaged or is about to engage in an act or practice that constitutes or will constitute a violation of Indiana's Election Code, the Commission "shall take the action it considers appropriate under the circumstances," including referring the matter to the attorney general if the commission requests a civil action be filed, and/or referring the matter to the appropriate prosecuting attorney if the case concerns a criminal violation. IND. CODE § 3-6-4.1-21(c).

Litany Pyle, testified by Affidavit that the Commission has never referred a corporation either to the Attorney General for civil action or to a prosecuting attorney for criminal prosecution based on a contribution by a corporation or otherwise to a PAC for IEs and both testified that they will not vote in favor of doing so in the present or in the future. *See* dkt. 45-7 at ¶¶ 7–9; dkt. 45-8 at ¶¶ 7–9.

Plaintiffs characterize these affidavits and the promises contained therein insufficient and illusory in the absence of a formal policy position issued on behalf of the State, given that these officials could be replaced or change their minds at any time in the future. Perhaps. However, the court is not required to address and resolve every "what if" imagined or raised by a litigant. *Citizens United* makes abundantly clear that IEs are exempt from the kinds of controls that Plaintiffs say they fear regarding contributions for IEs. That holding considered along with the state election officials' affidavits defeat any ability by Plaintiffs to establish a credible threat of enforcement of these statutes against them, which threat is the *sine qua non* of an injury in fact as required for standing.

Obviously, future legislative guidance concerning IEs may be desirable at some point, but it is not the Court's role to issue advisory opinions that essentially instruct state election officials to "follow federal law" or to "amend Indiana's state laws to address independent expenditures," particularly in the absence of any evidence that Plaintiffs have violated the law or that Plaintiffs are likely to violate the law in the future. The Seventh Circuit has observed that "[t]he statute books are littered with provisions that if read literally and without regard to their interpretive history would prohibit innocuous or even privileged conduct," but state legislatures do *not* have an obligation to "conform

their statute books to authoritative judicial interpretations." *Lawson v. Hill*, 368 F.3d 955, 958 (7th Cir. 2004) (citing *EEOC v. Illinois,* 69 F.3d 167, 170 (7th Cir. 1995)).[10] Should circumstances change in the future, obviously, Plaintiffs may face a situation that allows them to establish the requisite standing to sue on their constitutional claims; but at present there is simply no evidence they have suffered or face the threat of suffering a constitutional violation.

For these reasons, Defendants' motion to dismiss must be granted.

## II.   Plaintiffs' Motion for Preliminary Injunction

Even if Plaintiffs were able to establish standing to bring their constitutional claims, they have failed to satisfy all of the evidentiary requirements entitling them to a preliminary injunction.

### A. Standard of Review

In order to obtain a preliminary injunction, a party must show that: (1) it will suffer irreparable harm if the preliminary injunction is not awarded; (2) traditional legal remedies are inadequate; and (3) the claim has a reasonable likelihood of success on the merits. *BBL, Inc. v. City of Angola*, 809 F.3d 317, 323–24 (citing *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008)). Courts

---

[10] At the preliminary injunction hearing, Defendants' counsel referenced in discussing the holding in *Lawson v. Hill* that Judge Posner made clear that legislatures do not have an obligation to clean up their books and that statutes around the country are on state's books that can be unconstitutional if applied in a particular way. But what is important is that those statutes are interpreted in light of binding judicial decisions. Accordingly, Indiana's laws must be interpreted in a way that complies with *Citizens United* and Indiana has applied it that way and has never enforced it in a way contrary to *Citizens United*.

must then balance, on a sliding scale, the irreparable harm to the moving party with the harm an injunction would cause to the opposing party and also consider whether the public interest would be served by the preliminary injunction. *Girl Scouts of Manitou Council, Inc.*, 549 F.3d at 1086.

### B. Discussion

We begin by noting that, based on our review of the evidence and the controlling principles of law, Plaintiffs have not established the necessity of expedited relief in the form of a preliminary injunction to defeat or overcome any irreparable harm that would otherwise befall them in the absence of an injunction. An injunction is an extraordinary remedy, requiring that "plaintiffs seeking preliminary relief demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (emphasis in original) (collecting cases). "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* (citation omitted).

As previously elucidated, Plaintiffs have failed to establish a credible threat of enforcement of the election laws which they have challenged. This failure also speaks directly to the absence of any exigency warranting injunctive relief. Since injunctive relief is focused on enjoining officials from *enforcing* laws in an unconstitutional manner, rather than enjoining the laws themselves, there is nothing for the court to enjoin when the particular laws will not be enforced in the constitutionally offending fashion. In the

absence of any threat of any immediate and irreparable harm,[11] Plaintiffs are not entitled

to an injunction. The petition for preliminary injunction must therefore be denied.

## III.    Conclusion

Accordingly, we <u>GRANT</u> Defendants' Motion to Dismiss [Dkt. 44] and, in the

alternative, <u>DENY</u> Plaintiffs' Motion for Preliminary Injunction [Dkt. 6]. Judgment shall

enter accordingly.

IT IS SO ORDERED.

Date:        3/8/2022

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

---

[11] Recall that Defendants have affirmatively represented both to the Plaintiffs and to this Court that penalties will not be assessed against Sarkes for its intended corporate contribution to IRTL Victory Fund for the purpose of IEs.

Distribution:

Courtney Lyn Abshire
INDIANA ATTORNEY GENERAL
courtney.abshire@atg.in.gov

James Bopp, Jr.
The Bopp Law Firm
jboppjr@aol.com

Jefferson S. Garn
INDIANA ATTORNEY GENERAL
Jefferson.Garn@atg.in.gov

Joseph Daniel Maughon
THE BOPP LAW FIRM, PC
jmaughon@bopplaw.com

Courtney Turner Milbank
THE BOPP LAW FIRM PC
cmilbank@bopplaw.com

Caryn Nieman Szyper
INDIANA ATTORNEY GENERAL
caryn.szyper@atg.in.gov